We turn now to Terrell James v. Neal Stewart, 21-2882. Mr. Hines. Good afternoon, your honors. Lennox Hines representing the appellant, Terrell James. Your honor, the appellant, our position is that the district court drew inferences, resolved ambiguities, and construed facts in favor of the moving party, and thereby abused its discretion. Let me briefly go through some of the points. Assigning, defendant's assigning plaintiff alone to change light bulbs on high ceilings and stairwells were unsafe assignments. They were unsafe assignments, why? They were unsafe assignments because he could not do that alone. If he had to build scaffolds, he needed help. He needed someone else. Yet, he was assigned repeatedly alone to change light bulbs on high ceilings and stairwells. He had three choices. First choice is that he could have refused the work assignments. He didn't do that. Or he could try to change the work assignments by asking a co-worker or assistant to assist him in building a scaffold. He chose a third option, and which is he protested. He protested to his immediate supervisor. He protested to the superintendent who assigned the work. And he did it himself by using a tall ladder. Now, defendant claims- Where in the record is evidence that your client was obliged to change the light bulbs alone? Not in the complaint, but where in the record is there evidence? Could you give a page? Yes, looking at each of the work orders. Each of the work orders in question was for him to do that work. Not with anybody else. Look at each work order that we have presented evidence. Is there any evidence that he requested help to do the job? No, he did not request any help. Because to do so would be to change the work order itself. But he protested. He said, this is unsafe. I should not do this. I should not be required to do this. And he proceeded. Now, defendants claims that the established procedure was for the maintenance worker to inspect, to make an inspection of the site based upon the work order and determine the appropriate tools required. That's a self-serving statement by the defendant. And it's self-serving because- I don't know what you mean by self-serving, but does he mean they testify?  Hang on, let me finish my statement. Isn't every bit of testimony that's put in under oath evidence? And obviously, if it favors a party, I suppose you can label it self-serving. But that doesn't make it not evidence, correct? Correct. It is self-serving- So where's the contradictory evidence? It is self-serving because- No, I know it's self-serving, but that's fine, right? I mean, your client could testify in ways that I suppose one could say are self-serving. But we don't disbelieve your client automatically just because he testifies in his own favor, right? But if you would permit me, let me explain why I made that statement. If we look at the job description of the administrative assistant, And that is in the joint exhibits A317. Look at A317, which is a job description of the administrative assistant. The job description of the administrative assistant was specifically to make inspections to determine whether particular tools were needed. Evaluate repair service requests and make inspections to determine the need for actual and preventative maintenance. Also, inspects materials, tools, and equipment needed for repairs and maintenance. So does that mean that their job description would be to provide scaffolding if requested? No, their job description, the administrative assistant's job was to make inspections to determine whether scaffolding was needed, and in fact to so order it. That was not done. Now if we look at the job descriptions for the maintenance worker, That job description is at A450. Because I remind you that the defendants claim that the established procedure was for the worker to make the inspections. Now if we look at the job descriptions for the worker, nowhere in the job descriptions that are called for the workers to make any inspections. Doesn't it say he has to perform related work? Is an inspection in your view, as a matter of law, unrelated to maintenance? Looking to see if a light bulb is out or determining whether you need scaffolding instead of a ladder, that's unrelated to changing the light bulb? It certainly is related to changing the light bulbs, but it's specific if we look at the job description. The job descriptions requires the administrative assistant to make inspections to determine what tools were necessary. If you compare that with the job descriptions for the worker, the maintenance worker, there's no such requirement. Yet, the defendants claim that that was the established procedure. And so therefore, that is why we say it is self-serving. Let me just quickly point out a couple of other points. The discrimination claim that was made by a plaintiff, that he was given, that the assignments that were given to him were not given to his white co-workers. Defendants attempted to rebut that. How did they attempt to rebut it? They submitted work orders that they say was given to a white co-worker. And they submitted that. We rebutted that. How did we rebut it? We showed pictures and they are laid out in exhibits A324 to 332. We show that all of the assignments that were given to the white worker did not, most of them, did not require even a ladder. And the one assignment that required a ladder was a four foot ladder. Now that raised at least a contested issue of fact. Why did the district court ignore that? I do not know. Maybe defendants- I followed one part of your argument. You drew our attention to pages 324 to 333. Those are photographs, right? Yes, A324 to A332. Okay, and what is it that, in your view, these exhibits show? These exhibits show that for most of the assignments, no ladder was required. There was one assignment with which a ladder was required, and that was a four foot ladder. The issue that we are dealing with here is that the assignments that were given to Terrell James required him to either build scaffolding or to use a ladder, which was unsafe for him to do. And he protested it. Thank you very much, Mr. Hines. You reserve three minutes. Thank you. And I've given you an extra three minutes, but we're happy to do so. Okay, Mr. Lawrence. Good afternoon, I'm David Lawrence III. I'm an Assistant Solicitor General appearing on behalf of the Defendants Appellees. This court should affirm the summary judgment in favor of the Defendants Appellees. His plaintiff failed to raise a material issue of fact on his race discrimination, hostile work environment, or retaliation claims. Mr. Lawrence, can I ask you a simple threshold question about the amended complaint? Would you be prejudiced if James was permitted to file a third amended complaint? Yes, we would, Your Honor, because discovery had already closed. And the further amended complaint, of course, sought to raise an additional claim that had not been raised before. And what exactly is the prejudice? I'm trying to understand why this is a problem for you. The prejudice would be that the new claim, it's a new race discrimination claim, alleging that the plaintiff was given more onerous floor assignments, that this would call for more discovery to be taken. Because it was not an issue that had ever been addressed in the action before. When you say more discovery, had there already been completed various depositions of the plaintiff and different employees? Yes, Your Honor, there have been depositions, there have been, yes, Your Honor. So, if the complaint were amended, maybe this is more of a question for your opponent, but in your view, would there likely be new depositions, a new round of depositions of all those people, or some of those people? I believe so, in order to address the new issue. Yes, Your Honor. Well, your claim of prejudice would be answered, would it not, if they were allowed to amend the complaint, but discovery were reopened with respect to the new claim added? Yes, Your Honor, the prejudice would be that discovery would have to be reopened. And as we further pointed out, the law required the plaintiff to establish a reasonable excuse for his delay, and he gave no excuse whatsoever. And we also argue that the proposed claim is futile because for several reasons, one is that the proposed new claim involves floor assignments that were not made by the defendants here, but by their predecessors, that this claim could and raised in plaintiff's prior action, therefore, it's barred by the res judicata, and that the plaintiff is not similarly situated to those other employees who had different floor assignments, because they had floor assignments in older buildings that required more repairs per floor, or they had other additional responsibilities that the plaintiff did not have. This is the second action brought by this plaintiff, right? Yes, Your Honor. And so we're dealing with events. If you're going to have that reopened discovery, that took place when? What year are we talking about? Well, the assignments have been given back in either 2015 or 2016. So it's a period of, well, this action was brought in 2019 and presumably the assignments were continuing on from there, so at least three or four years. Do we need to address the question of whether white workers were also assigned to repair items at high heights? Well, it's not necessary to reach that because it's shown in the record that the plaintiff had the ability to request scaffolding to make the repair work safe, or in the event that he used a ladder to have other employees there to spot him. He admitted as much in his deposition, for example, that he used a scaffold. At page 178, he admits that he asked for a scaffold on one occasion and that it was received by him. I mean, his complaint seemed to be that it took a long time for the scaffold to be built, but that's not really his problem, that it took a while before the repair work could be done, or measures were taken for his safety, as was the policy of the college, that this could be requested by anyone in the record. There are declarations in the record saying that scaffolds were frequently requested and were never denied to employees. So is the characterization of your argument in that respect essentially that this is not what could be considered an adverse employment action? Because I suppose it could be adverse if it caused him to have to work in an unsafe environment. But you're saying that the evidence showed he could request and would be given the scaffolding or the other equipment necessary to do it in a safe way. Is that essentially what you're arguing here? It's acting on it, that it's not an adverse employment action for purposes of either the discrimination claim or the retaliation claim. Okay. As for the work repairs of which the plaintiff complains that he received, where it turned out that no repairs were, in fact, needed, all that an employee had to do in that situation is simply report back that the job had been completed. So that was, at most, an inconvenience. And Plaintiff puts into the record he only eight work orders where he says that this occurred, that he got work orders where no repairs were needed. He says that this happens frequently, but there are only eight that he actually put into the record. So it certainly was not a pervasive, everyday thing, apparently, from the record. Now, while Plaintiff argues that the administrative superintendents should have inspected the work areas beforehand and ordered scaffolding or decided that repairs were not needed, it's understood in the record that the defendants did not view their job that way. And there's no evidence that the defendants did so for other employees. Therefore, there's no basis for an inference of discrimination. And the fact, as far as the work orders, where it turned out that no repairs ended up being needed, the defendants could not have, the evidence was that the university employees would put in a request saying something was broken. A work order would be issued by the administrative superintendent. So the administrative superintendent had no basis to know whether the work order would require repairs or not. So therefore, the administrative superintendents, the defendants here, could not have sought to give more to the plaintiff than to other employees. Whether it's employees of different races or of any employees at all. What about Mr. Hines' argument that the district court made findings of fact, in effect? The district court did not do so, your honor. The district court carefully reviewed the record and found that the evidence submitted by the plaintiff did not suffice to establish a material issue of fact on any of his claims. The district court did so despite what the district court found was a deficient rule 56.1 statement. And following this court case law that a similar judgment cannot be granted simply based on a deficient rule 56.1 statement. The district court carefully reviewed the evidence submitted by both sides and simply found that no reasonable jury could find, based on the evidence submitted, that the plaintiff should prevail on any of his claims. Unless the court has any further questions, I'll ask the court to affirm the summary judgment below. Thank you. Mr. Hines, you have three minutes of rebuttal. Just briefly, your honor, with respect to the, with respect to the district court denying the application to amend. We showed that there was no prejudice to the defendants, why? Because the defendants anticipated those arguments, and if you look at their defense, they in fact offered arguments with respect to the particular proofs that we were asking the court for permission for us to amend the complaint. To deal with those proofs. But they anticipated them, and they argued against them. Specifically, with respect to the claims concerning the amount of work that was being assigned to Mr. James in the new buildings. Let me just briefly address one key point that my colleague just mentioned. And that is the unnecessary work that was assigned to Mr. James. It was not one or two assignments. It was between 10 and 20 assignments. And the position that was taken by the defendants was that Mr. James had a duty to inspect the assignments that were given to him. To determine what tools, et cetera, was needed. That flies in the face of the responsibilities of the administrative superintendent. Someone goes to the administrative superintendent and says, there was a light that is out on floor number 12. The administrative superintendent had a responsibility of making an inspection to determine whether or not that was correct or not. What tools needed to be given before issuing the work order. Now, the immediate supervisor in this matter, supervisor to Mr. James. He himself reviewed these complaints and found them to be credible. It wasn't just one complaint of unnecessary work, but there were between 10 and 20. Thank you, Your Honor. Thank you very much. We'll reserve the decision and we thank you both for your arguments.